UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FRANK PAUL JANANGELO,

    Plaintiff,

        v.                                                        No. 3:17-cv-1496(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Frank Paul Janangelo's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding his case for a rehearing. [Doc. # 19]. The Commissioner, in turn, has moved for an order affirming her decision. [Doc. # 20]. After careful consideration of the

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

arguments of both parties, and thorough review of the administrative record, the matter is remanded for additional proceedings.

## LEGAL STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258. If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## BACKGROUND

a.  **Facts**

Plaintiff filed his DIB application on March 12, 2014, alleging a disability onset date of August 9, 2010. He last met the insured status requirements of the Social Security Act on September 30, 2011.[2] Plaintiff's claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On September 6, 2016, a hearing was held before administrative law judge John Noel ("the ALJ"). On October 28, 2016, the ALJ issued a decision denying Plaintiff's claim. Plaintiff then sought review with the Appeals Council. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. This action followed.

Plaintiff was forty-four years old on the date last insured. He has not worked since the alleged onset date. He has past work experience as a computer systems maintenance technician. He has at least a twelfth grade education and is able to communicate in English. At the hearing before the ALJ, Plaintiff alleged he was primarily disabled due to his mental impairments. (R. 35).

Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 19-2]. The Court adopts this stipulation and incorporates it by reference herein.

b.  **The ALJ's Decision**

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether

---

[2] Thus, the relevant period in this case – the period during which Plaintiff must establish disability – is from August 9, 2010 until September 30, 2011.

the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520 (a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

In this case, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured. (R. 14). At Step Two, the ALJ found Plaintiff had the following severe impairments during the relevant period: human immunodeficiency virus; recurrent arrhythmias; and anxiety. (R. 14). In addition, the ALJ concluded that Plaintiff had other medical impairments that were nonsevere, including irritable bowel syndrome, diverticulitis, anemia, hypertension, hyperlipidemia, gastro esophageal reflux disease, and obesity. (R. 14-15). At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of

the listed impairments. (R. 15-17). Next, the ALJ determined Plaintiff retained the following residual functional capacity[3] during the relevant period:

> Plaintiff could perform medium work[4] except he could only frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. He could perform simple, routine tasks; use judgment limited to simple, work-related decisions; have no contact with the public; and deal with routine changes in the work setting.

(R. 17-21). At Step Four, the ALJ found Plaintiff was unable to perform past work. (R. 21). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that there are jobs existing in significant numbers in the national economy Plaintiff could perform. (R. 22). Specifically, the VE testified that Plaintiff could perform the positions of packer, industrial cleaner, and order picker. (R. 22). Accordingly, the ALJ found Plaintiff not to be disabled.

## DISCUSSION

Plaintiff argues that the ALJ deficiently analyzed the medical opinion evidence, and in so doing, violated the treating physician rule. The Court agrees. The ALJ must analyze medical opinions, along with the other evidence of record, when determining a claimant's RFC. When weighing opinion evidence, a treating source's opinion on the nature or severity of a claimant's impairments should be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c). When a treating physician's opinion is not given controlling weight, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d 370,

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).
[4] Medium work involves lifting no more than 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). While a "slavish recitation of each and every factor" is unnecessary, the ALJ's "reasoning and adherence to the regulation [must be] clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess*, 537 F.3d at 129. An ALJ's failure to provide good reasons for the weight given to a treating source's opinion is grounds for remand. *Halloran*, 362 F.3d at 33.

Here, Plaintiff contends that the ALJ should have given controlling weight to the opinions of Dr. Panoor, his psychiatrist. The Commissioner maintains that the ALJ's evaluation of the opinion evidence is supported by substantial evidence. Because the Court finds that the ALJ erred in the weight assigned to Dr. Panoor's opinions, and in failing to provide good reasons for discounting that opinion, remand is necessary.

Dr. Panoor, Plaintiff's longtime treating psychiatrist, completed a medical source statement in May 2014 based on her treatment of Plaintiff from April 2009 through February 2014. (R. 685). She diagnosed him with PTSD and anxiety disorder. (*Id.*). She opined that Plaintiff had a serious problem using appropriate coping skills to meet ordinary demands of a work environment and a very serious problem handling frustration appropriately. (R. 686). Dr. Panoor found Plaintiff had a serious problem interacting with others, asking questions, respecting and responding appropriately to authority, and getting along with others without distracting them

6

or exhibiting behavioral extremes. (R. 687). Finally, she opined that Plaintiff had a very serious problem carrying out multi-step instructions, focusing, changing from one simple task to the next, performing basic work activities, and performing work activity on a sustained basis. (*Id.*).

Dr. Panoor completed a second medical source statement in January 2015. This report was, again, based on her treatment of Plaintiff from April 2009 through February 2014. (R. 713). She found Plaintiff had average functioning in activities of daily living and social interaction. (R. 715-16). Dr. Panoor additionally opined that Plaintiff had a reduced ability in carrying out single-step instructions, and better than average functioning in other areas of task performance. (R. 716).

In August of 2016, Dr. Panoor completed a third medical source statement. This report was based on her treatment of Plaintiff from April 2009 through July 2016. (R. 1239). Dr. Panoor assessed moderate impairment in Plaintiff's ability to understand and remember short simple instructions, carry out short, simple instructions, and to make work related judgments; and extreme impairment in Plaintiff's ability to understand, remember, and carry out detailed instructions. (*Id.*). She opined Plaintiff had marked impairments in ability to interact with others in a work setting, respond appropriately to work pressure, and respond appropriately to change in routine work setting. (R. 1240). Dr. Panoor also found Plaintiff had marked restrictions on his activities of daily living and in maintaining social functioning, and frequent deficiencies of concentration, persistence, or pace. (*Id.*).

The ALJ gave Dr. Panoor's opinions little weight, reasoning that they were completed years after the relevant period, were inconsistent with each other, and were not supported by treatment notes from the relevant period. (R. 21).

7

As the ALJ points out, the opinions of Dr. Panoor – given in 2014, 2015, and 2016 – are from years after the relevant time period (2009-2010). The ALJ stated that since the evaluations were completed after the relevant period, they "do not reflect the claimant's functioning solely during the relevant period." (R. 21). The problem with this statement is that there is no meaningful evidence to support it. What is undisputed is that Dr. Panoor treated Plaintiff *during* the relevant period, and that she stated on the evaluation forms that her opinion *dated back* to the relevant period. "[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence." *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003). There is no indication that Dr. Panoor's opinions can be delineated such that the Court can reasonably say that they apply only after the period at issue. In fact, Dr. Panoor has treated Plaintiff for years, and has completed evaluations that aim to document his longitudinal functioning. And, the opinions indicate that they are meant to reflect Plaintiff's functioning within the relevant period. *See Budnick v. Commissioner*, No. 3:17-cv-1546(SALM), 2018 WL 4253172, at * 7 (D. Conn. Sept. 6, 2018) (finding an opinion retrospective to the relevant period when it discussed a claimants limitations and symptoms over a period of time including the relevant period). Thus, the ALJ's statement that Dr. Panoor's opinions do not reflect Plaintiff's functioning during the relevant period is hollow in this context, and does not amount to a good reason for discounting them.

Likewise, the Court is not persuaded by the ALJ's finding that Dr. Panoor's opinions are inconsistent with each other. The medical source statement forms Dr. Panoor completed required her to check boxes rating functional abilities or limitations. On the form she competed in 2014, functioning was rated on a scale of 1 to 5, with 1 being no problem and 5 being a very

8

serious problem. On the form she completed in 2015, functioning was rated on a scale of 1 to 7, with 1 being no ability and 7 being excellent ability. And, on the form she completed in 2016, the number system was not used; instead, functional limitations were rated on a scale of "none" to "extreme." As set forth above, the 2014 opinion found Plaintiff has serious and very serious problems with functioning, and the 2016 opinion found moderate, marked, and extreme functional limitations, while the 2015 opinion found generally average functioning. Plaintiff argues that Dr. Panoor must not have realized that the rating scales were inverted on the 2015 form, which explains the discrepancy. This is entirely possible, as a closer look at the 2015 opinion reveals: Dr. Panoor found Plaintiff has a reduced ability in carrying out single-step instructions, but has better than average functioning carrying out multi-step instructions. (R. 716). This is clearly illogical and should have put the ALJ on alert that follow up was required to clarify a stark irregularity in the 2015 opinion itself, as well the opinion in the context of the other medical source statements Dr. Panoor submitted. "[I[f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998). This duty applies even when the claimant is represented by counsel. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Thus, the ALJ was under and obligation to seek addition information from Dr. Panoor before rejecting her opinions on the grounds of inconsistency.

The ALJ also reasoned, in rejecting Dr. Panoor's opinions, that reports of Plaintiff's memory difficulties, poor concentration, and impaired judgment were inconsistent with treatment notes from the relevant period "showing opposite findings." (R. 21). The treatment notes to which the ALJ refers cannot be read so far. In February and March of 2010, treatment notes

show Plaintiff was "doing well," keeping his appointments, and having positive responses to medication. (R. 701). In May 2010, Plaintiff stated he "f[elt] better" and reported no medication side effects. (R. 700). Treatment notes from August 2010 indicate Plaintiff's anxiety was "subdued a little." (*Id.*). On that date, his medication was "working," and his insight and judgment were "fair." (*Id.*). In November 2010, Plaintiff reported that though he had "difficulty […] stressors," he was able to "handle everyday things." (*Id.*). In July of 2017, Plaintiff's *goals* were listed as returning to work part time over the summer, and then to work full time. (R. 699). The limited information in these treatment notes cannot be said to be the opposite of the limitations to which Dr. Panoor opines. That Plaintiff could keep appointments, take medication without suffering from side effects, on one day have slightly subdued anxiety, and handle everyday matters but have difficulty with other stressors, is by no means a ringing endorsement of his ability to maintain full time work on a consistent basis. While he may have had an aspiration to return to work, the records from the relevant time period, read in light of Dr. Panoor's opinions, simply do not suggest that he could.

The Court concludes that the ALJ did not give controlling weight to Dr. Panoor's opinions, and failed to provide good reasons for not doing so. If Dr. Panoor's opinions were to be credited, the assessed RFC could not stand. Accordingly, this matter is remanded so that the ALJ can properly assess the weight to be given to Dr. Panoor's opinions. In so doing, the ALJ should re-contact Dr. Panoor to clarify inconsistencies.

## **Conclusion**

In light of the above, the Court need not address Plaintiff's remaining claims. This matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling. Plaintiff's Motion for an Order Reversing or Remanding is granted. Defendant's

Motion for an Order to Affirm is denied. The Clerk shall enter judgment in favor of Plaintiff and close this case. The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the District Judge or Magistrate Judge who issued the Ruling that remanded the case.

    SO ORDERED, this  19th  day of September, 2018, at Bridgeport, Connecticut.

                                    */s/ William I. Garfinkel*
                                    WILLIAM I. GARFINKEL
                                    United States Magistrate Judge